## Case No. 4,563.

EVANS v. The JOHN F. WARNER.

[4 West. Law Month. 193.]

District Court, N. D. New York. March Term, 1862.

HALL, District Judge. This is a case of collision. The libellant is the owner of the canal boat Mygatt, which was run into and sunk on the 11th November, 1861, whilst endeavoring to turn in Buffalo creek, outside of

the propeller Euphrates, which then lay at the dock near the foot of Commercial street. The Warner was coming into port, with the wind blowing a gale directly up the stream. At a slight bend in the creek, a few rods below the Mygatt, she took a rank sheer to port, and ran against and carried away the stern of that boat before she could be brought up by her starboard anchor, which was cast as soon as possible after the sheer commenced. After a careful review of the testimony, I retain the impression made by the evidence at the hearing, and I shall therefore dismiss the libel with costs. Considering the necessity of carrying all the sail the Warner had up, in order to cross the bar at the mouth of the harbor; the season of the year; the violence of the gale; the wet and swollen condition of the rigging, and the consequent difficulty in taking in sail, the evidence which was given to show that the master of the Warner took in sail as rapidly as possible, is entirely satisfactory; and the preparations which he made before entering the harbor, and the whole conduct of the master, were of the most satisfactory character, evincing superior skill and more than ordinary prudence and forecast. No fault can be attributed to those in charge of the Warner; on the contrary, the evidence shows that her master was skillful, careful and energetic, and that he did all that could be reasonably required of him in order to prevent a collision. That his vessel took a sudden sheer, when she "smelt ground" on the spit referred to by the witnesses, was no fault of his; and when the sheer occurred, he did all that could be done to prevent the injury which ensued. In view of the possibility of being required to anchor in a sudden emergency, he had cleared away his anchors and stationed a man forward at the starboard anchor, ready to let it go, "stock and fluke;" and when the sheer to port occurred, the orders to put the helm hard-a-port and let go the starboard anchor, followed in rapid succession. There was, however, not sufficient space between the Warner and the Mygatt to allow the former to be brought up by her anchor before the collision occurred, and the stem of the canal boat was crushed between the Warner and a schooner lying above the Euphrates and the Mygatt; a schooner which lay outside of two canal boats and two other schooners, lying side by side, and extended far out towards the center of the channel of the creek.

It is probable from the evidence that the unusual accumulation on the spit at the point where the sheer occurred, was produced by the extraordinary freshet which had a few weeks before brought down mud, sand, and other deposits in the creek; and it may have been increased by the current which the gale then in progress had sent up the creek. At all events, it could not have been anticipated by the master of the Warner, that with the water of the creek at least two feet above its ordinary height, there could be any danger in passing that point with his schooner; and as he endeavored to avoid the spit as far as practicable by going as near the opposite side of the creek as the opening in the channel would allow, the Warner must be held entirely free from fault. The management of the master of the canal boat in extending the stem of his boat so far out into the channel, after being warned that a vessel was coming in, was extremely careless. After he knew the Warner was approaching, there was abundant time for him to haul his boat so far from the space left open by the unusual crowd of vessels in port as to be entirely out of danger, but he imprudently, if not recklessly, crowded the stem of his boat into this open space, which, in consequence of the very extraordinary crowd of vessels in the creek, had been already narrowed to less than half the width of the channel, and thus brought on his boat the consequences of this collision. The master of the canal boat was bound to exercise extraordinary vigilance, as well as to act with great prudence and caution, in attempting to change the position of his boat under the circumstances of the case. The harbor was crowded to excess with vessels lying three, four, and five abreast, in violation of the city ordinances, and narrowing the channel in many places—and particularly at that point where the Mygatt attempted to turn—to such an extent as to require the utmost care and skill on the part of those in charge of vessels coming into port; vessels were frequently coming in and passing up this narrow channel; the wind was blowing a gale up the creek; the weather had been wet and cold, and the sails and rigging of vessels were difficult of management; anchoring in the creek was dangerous to a vessel under way; and it was hardly possible that a vessel could be stopped by any other means below the point where the Mygatt lay; which was just above a slight bend in the creek, and just above the spit which caused the sheer of the Warner. The Mygatt was a canal boat, and therefore too frail to bear even a glancing blow from the heavier and stronger vessels coming in from the lake; her master was warned that a vessel was approaching, and of the danger of going out into the open channel; and yet he proceeded heedlessly and carelessly to place the stem of his boat a considerable distance outside of the vessels lying above and below him; and in such a position as to be crushed between the approaching vessel and the outer vessel of those lying above him. To hold the master and crew of a sail vessel coming into port on a raw, chilly day, near the middle of November, after the wearisome and exhausting labors of a stormy and tempestuous night, and with the wind still blowing a gale, in any degree responsible for a collision occurring under the circumstances of this case—a collision which very little exertion and less

than ordinary precaution on the part of those in charge of the canal boat would have rendered impossible—would, in my opinion, be gross injustice. The libel in this case is dismissed with costs.